UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 22-CR-20429-SCOLA

UNITED STATES OF AMERICA

vs.

ELIAZAR JAUREGUI,
        Defendant.
_____/

**<u>STIPULATED FACTUAL PROFFER</u>**

Had this case proceeded to trial, the United States would have proven the following facts beyond a reasonable doubt:

Beginning in February 2022, the Federal Bureau of Investigation and the Bureau of Alcohol, Tobacco, Firearms, and Explosives began a long-term drug trafficking investigation in Miami-Dade County. The investigation initially targeted Jose Escalona Mesa, and law enforcement conducted a number of controlled purchases of methamphetamine from Escalona Mesa between February 2022 and May 2022. During those controlled purchases, law enforcement learned that Alberto Herrera was supplying Escalona Mesa with the methamphetamine that law enforcement had purchased. The investigation then obtained a warrant, signed by the Honorable Robert N. Scola, United States District Court Judge for the Southern District of Florida, to intercept wire communications over cellphones used by both Escalona Mesa and Herrera on June 6, 2022. During this first period of interception, Rigoberto Guerra was intercepted calling Herrera to order multiple ounces of methamphetamine.

On July 27, 2022, law enforcement obtained a warrant signed by the Honorable Darin P. Gayles, United States District Court Judge for the Southern District of Florida, that authorized law

1

enforcement to intercept wire communications over cellphones used by Herrera and Ciro Martinez Machado for a period of thirty days.

On August 10, 2022, Guerra called Herrera at 4:27 pm (Session 4268) and asked for two ounces of meth. Herrera told Guerra that Herrera had to call his "buddy" around 7 pm to see if Herrera could get it. Guerra said he would wait until Herrera confirmed that he had the meth before Guerra would travel to Herrera's apartment in Miami.

At 4:28 pm (Session 4270), Herrera called Eliazar Jauregui to confirm that Herrera could pick up the meth. Herrera stated he would have his money ready as well, and that Herrera's customer, Guerra, wanted it in "rocks." Herrera then called back Guerra (Session 4271) to state that Herrera would "resolve it" at 7 pm.

At approximately 7:58 pm (Session 4296), Herrera called Guerra to confirm if he still wanted the meth. Herrera then called Jauregui (Session 4299) to see if Jauregui could give him "two," or two ounces of methamphetamine. Jauregui confirmed that he had "two" for sale. Herrera directed Jauregui to bring it to Herrera's apartment, and Jauregui stated he would be there in fifteen to twenty minutes. At approximately 8:22 pm, law enforcement observed Jauregui driving a yellow Crown Victoria taxi-cab to Herrera's residence at 4301 NW 8th Terrace, where Herrera and Jauregui conducted a hand-to-hand transaction.

At approximately 8:22 pm (Session 4306), Herrera called Guerra and stated he had it and that Guerra should come pick it up at Herrera's apartment. Guerra stated he was on his way. At approximately 8:36 pm, law enforcement observed a white 2011 Mercedes GL430, driven by Guerra, arrive on the south side of Herrera's apartment building. Herrera approached the vehicle and entered the front passenger's seat. At approximately 8:45 pm, Herrera exited the Mercedes,

and Guerra drove away.  Herrera then called Jauregui at 8:45 pm (Session 4308) to tell Jauregui that Herrera had his money.  Jauregui stated that Herrera had plenty of time, but Herrera told Jauregui to come back in approximately an hour.

Law enforcement in a marked Miami-Dade Police Department vehicle then conducted a traffic stop on Guerra in the Mercedes in the vicinity of 2159 NW 7th Street in Miami.  Guerra presented an expired Washington State Driver's License.  Law enforcement searched the vehicle and recovered a clear plastic sandwich bag containing two additional plastic bags with suspect methamphetamine.  Law enforcement seized the drugs but did not arrest Guerra at that time.  A field test of the substances showed the presence of methamphetamine, and a laboratory analysis confirmed that the substances were in fact methamphetamine, with a net weight of 56.14 grams.  The purity of methamphetamine was 98%, with an actual amount of methamphetamine of 55.01 grams.

After the seizure, Guerra called Herrera a number of times to let Herrera know that the police had seized the meth.  During the conversations, Herrera asked a lot of questions to try to determine if there was a problem with Guerra or with Herrera.  Herrera ultimately concluded that either there was a snitch or the police were corrupt.  At approximately 10:38 pm (Session 4334), Herrera called Jauregui to let him know about what happened with Guerra.  Herrera stated he would call Jauregui the next day to set up a different meeting location to get more meth from Jauregui.

[Rest of Page Intentionally Blank]

Based upon the above evidence, the total amount of actual methamphetamine that is reasonably foreseeable to Jauregui is between 50 and 150 grams of actual methamphetamine.

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

Date: 1/10/23    By: _____
BRIAN DOBBINS
ASSISTANT UNITED STATES ATTORNEY

Date: 01/10/23    By: _____
KIRSTEN R. NELSON, ESQ.
ATTORNEY FOR DEFENDANT

Date: 01/10/23    By: _____
ELIAZAR JAUREGUI
DEFENDANT